1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10  TIMOTHY LEE ALLREAD,

11              Plaintiff,

12       v.

13  CAROLYN W COLVIN, Acting
    Commissioner of Social Security,

14
                    Defendant.

15

CASE NO. 3:15-CV-05627-RBL-DWC

REPORT AND RECOMMENDATION
ON PLAINTIFF'S COMPLAINT

Noting Date: March 18,  2016

16       The District Court has referred this action, filed pursuant to 42 U.S.C. § 405(g), to United

17  States Magistrate Judge David W. Christel. Plaintiff Timothy Lee Allread filed this matter

18  seeking judicial review of Defendant's denial of Plaintiff's application for supplemental security

19  income ("SSI") and disability insurance benefits.

20       After considering the record, the Court concludes the ALJ properly analyzed Plaintiff's

21  credibility and the medical opinion evidence. As the ALJ's decision finding Plaintiff not disabled

22  is supported by substantial evidence, the undersigned recommends the Commissioner's decision

23  be affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

24

1

<u>FACTUAL AND PROCEDURAL HISTORY</u>

2       On April 25, 2012, Plaintiff filed an application for SSI and disability insurance benefits,

3 alleging disability as of August 20, 2011. *See* Dkt. 9, Administrative Record ("AR") 11. The

4 application was denied upon initial administrative review and on reconsideration. AR 11. A

5 hearing was held before Administrative Law Judge ("ALJ") Rebekah Ross on January 27, 2014.

6 *See* AR 27-67. In a decision dated February 6, 2014, the ALJ determined Plaintiff to be not

7 disabled. *See* AR 11-21. Plaintiff's request for review of the ALJ's decision was denied by the

8 Appeals Council, making the ALJ's decision the final decision of the Commissioner of Social

9 Security ("Commissioner"). *See* AR 1-5; 20 C.F.R. § 404.981, § 416.1481.

10       In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred by:  (1) giving insufficient

11 reasons for finding Plaintiff lacked credibility; (2) improperly rejecting the medical opinion

12 evidence; and (3) failing to properly assess Plaintiff's residual functional capacity and find

13 Plaintiff not disabled at Step 5 of the sequential evaluation process. Dkt. 14, pp. 1-2.[1]

14

<u>STANDARD OF REVIEW</u>

15       Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

16 social security benefits if the ALJ's findings are based on legal error or not supported by

17 substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

18 Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

19

20

21

22     [1] Plaintiff framed the issues as: the ALJ erred by (1) failing to give proper weight to treating mental health provider Greater Lakes Mental Health; (2) giving Dr. Lynn Staker, M.D. great weight for the purpose of mischaracterizing his report; (3) rejecting the opinions of Constance Collier, Ed.S and Christina Woolery, M.A.; (4)

23 failing to provide specific, cogent reasons for finding Plaintiff not credible; (5) failing to provide clear and convincing reasons for giving little weight to the Franciscan Spine Center's evaluation; and (6) failing to properly

24 assess Plaintiff's residual functional capacity ("RFC") and failing to pose an accurate RFC to the vocational expert at Step 5. Dkt. 14.

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 2

DISCUSSION

**I.    Whether the ALJ provided sufficient reasons for discrediting Plaintiff's testimony.**

Plaintiff contends the ALJ erred by failing to provide specific, cogent reasons for finding Plaintiff not credible. Dkt. 14, pp. 9-12.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834.

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ may also consider if a claimant's complaints are "inconsistent with clinical observations[.]" *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998).

Questions of credibility are solely within the control of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). In addition, the Court may not reverse a credibility determination where the determination is based on contradictory or ambiguous evidence. *Id.* at 579.

Plaintiff testified he is unable to work due to back, shoulder, and knee pain. AR 17. He stated he is paranoid and a typical day is spent hiding in his house because he does not want to

1  deal with people. AR 17. Plaintiff also testified he has a thumb injury, which causes him to drop

2  things, and suffers from headaches, which affect his vision and ability to concentrate. AR 17, 44,

3  45.

4        After outlining the medical evidence contained in the record, the ALJ found Plaintiff's

5  impairments could be expected to cause some of his symptoms. AR 16-18. However, the ALJ

6  determined Plaintiff's "statements concerning the intensity, persistence and limiting effects of

7  these symptoms are not entirely credible" because Plaintiff received routine medical treatment

8  and failed to follow the recommendations of his treatment providers, his symptoms did not

9  suggest severe PTSD, his paranoia could be caused by cannabis abuse, his activity level is

10  inconsistent with the alleged severity of his impairments, he did not stop working because of his

11  impairments, and he has criminal history. AR 17-18.

12        A.  _Plaintiff's Arguments_

13        Plaintiff argues the ALJ erred because her findings regarding Plaintiff's (1) social

14  activities and (2) drug abuse are not specific, cogent reasons for concluding Plaintiff is not

15  entirely credible. _See_ Dkt. 14, pp. 9-12.

16        First, the ALJ found Plaintiff's activity level was inconsistent with the alleged severity of

17  his impairments. AR 18. The Ninth Circuit has recognized two grounds for using daily activities

18  to form the basis of an adverse credibility determination: (1) whether the activities contradict the

19  claimant's other testimony and (2) whether the activities of daily living meet "the threshold for

20  transferable work skills." _Orn v. Astrue_, 495 F.3d 625, 639 (9th Cir. 2007).

21        During the hearing, Plaintiff testified a typical day is spent hiding in his house, he goes to

22  the mall once a week to walk, and does not like dealing with people. _See_ AR 17, 46-47. Plaintiff

23  also stated his girlfriend and another friend help him with dishes, cooking, and housework. AR

24

48. He reported some friends visit him, but he doesn't really have a lot of friends anymore. AR 56.

In contrast to Plaintiff's testimony, the ALJ found the record shows: Plaintiff reported moderate activity level, has pets (dogs and reptiles) in his home, and is responsible for caring for and cleaning up after the animals, AR 18, 340; Plaintiff has firearms in his home for hunting, traveled to California in 2011, and reported to his therapist he planned to spend several weekends camping, AR 18, 340, 492; Plaintiff engages in a therapy group which uses crafts as tools to manage symptoms, increase functioning, and increase self-determination, AR 18, *see* 490, 493; and Plaintiff walks around the mall once a week, and has a girlfriend and friends. AR 18, 47, 443. After review of the ALJ's decision and the record, the Court finds substantial evidence supports the ALJ finding Plaintiff's activity level was inconsistent with the alleged severity of his symptoms.

Second, the ALJ found Plaintiff's "mild paranoia could be from either PTSD or from cannabis abuse." AR 18. The record does not reflect Plaintiff's cannabis use caused paranoia, nor does the ALJ cite to the record to support this finding. Thus, the Court finds the ALJ's conclusion that Plaintiff's mild paranoia could be caused by his cannabis abuse is not supported by substantial evidence.[2]

---

[2] In asserting the credibility determination is flawed, Plaintiff maintains the ALJ erred by failing to conduct a "materiality" analysis of Plaintiff's alleged cannabis cream abuse. Dkt. 14, p. 11-12. An ALJ must conclude a claimant is disabled under the five-step sequential evaluation process before considering whether a severe impairment of Drug Addiction and Alcoholism ("DAA") is material. SSR 13-2p, 2013 WL 621536, *4; *see also Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007); *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). If a claimant is able to engage in some substantial gainful activity despite his severe impairments, an ALJ does not need to determine the "materiality" of the claimant's drug use. SSR 13-2p at *5. Here, the ALJ found Plaintiff not disabled under the five-step sequential evaluation process when Plaintiff's cannabis use was included as a severe impairment. *See* AR 13-21. Thus, the ALJ was not required to perform the "materiality" analysis, and did not err in her credibility assessment by failing to determine if Plaintiff's DAA impairment was material.

      B.  *ALJ's Remaining Reasons*

      The ALJ also provided four additional reasons for finding Plaintiff not entirely credible. AR 17-18. Plaintiff does not challenge the remaining reasons given by the ALJ. *See* Dkt. 14. As Plaintiff does not challenge the ALJ's additional reasons for finding Plaintiff not entirely credible, he has waived the arguments. *See Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1226, n. 7 (finding an argument not raised in the plaintiff's opening brief was deemed waived).

      However, after review of the ALJ's decision and the record, the Court finds the four additional reasons provided by the ALJ are clear and convincing reasons for finding Plaintiff not entirely credible. The ALJ reasonably considered: (1) Plaintiff's treatment has been essentially routine and he has failed to follow recommended treatment, *see* Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, *7 (the Commissioner can find a claimant lacks credibility if "the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure"); (2) Plaintiff displayed normal responses following a home invasion assault, not symptoms of severe PTSD, *see Molina*, 674 F.3d at 1111 ("we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record"); (3) Plaintiff did not stop working because of his impairments, *see Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (relying on a claimant's departure from work for reasons other than medical impairments can be a valid credibility factor); and (4) Plaintiff's criminal history, *see Stewart v. Astrue*, 2009 WL 3757401, *7 (C.D. Cal. Nov. 3, 2009) ("By utilizing ordinary techniques of credibility evaluation, the ALJ rejected Plaintiff's credibility partially based on her past criminal history.").

1    C. *Conclusion*

2    The Court finds the ALJ erred by finding Plaintiff not credible because his mild paranoia

3 could be caused by his cannabis abuse. However, because one reason for discounting Plaintiff's

4 credibility was improper does not render the ALJ's credibility determination invalid as long as

5 the credibility determination is supported by substantial evidence in the record. *Tonapetyan v.*

6 *Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). As discussed above, the ALJ gave five valid

7 reasons for finding Plaintiff was not entirely credible. Accordingly, the ALJ did not commit

8 harmful err and her analysis of Plaintiff's credibility is proper.

9    **II.**    **Whether the ALJ improperly rejected the medical opinion evidence.**

10    Plaintiff argues the ALJ erred by rejecting medical evidence submitted by Dr. Lynn

11 Staker, Greater Lakes Mental Healthcare ("Greater Lakes"), and the Franciscan Spine Center.

12 Dkt. 14, pp. 4-9, 13-14.

13    A. *Acceptable Medical Source*

14    First, Plaintiff asserts the ALJ erred when she mischaracterized the opinion evidence of

15 examining physician Dr. Lynn Staker, an "acceptable medical source."[3] Dkt. 14, pp. 7-8.

16 Specifically, Plaintiff maintains the ALJ erred by misquoting Dr. Staker's opinion regarding

17 vocational retraining to support finding Plaintiff not disabled. *Id.* at p. 8.

18    The ALJ is responsible for determining credibility and resolving ambiguities and

19 conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

20 Determining whether inconsistencies in the medical evidence "are material (or are in fact

21 inconsistencies at all) and whether certain factors are relevant to discount" the opinions of

22 _____

23    [3] "Acceptable medical sources" are sources who can provide evidence to establish an impairment. 20 C.F.R. § 404.1513(a). Acceptable medical sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. *See id.*

1    medical experts "falls within this responsibility." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169

2    F.3d 595, 603 (9th Cir. 1999)). It is not the job of the Court to reweigh the evidence: If the

3    evidence "is susceptible to more than one rational interpretation," including one supporting the

4    decision of the Commissioner, the Commissioner's conclusion "must be upheld." *Thomas v.*

5    *Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (*citing Morgan*, 169 F.3d at 599, 601).

6          After evaluating Plaintiff, Dr. Staker opined Plaintiff would have limitations "doing

7    overhead activity or heavy duty type labor that include significant amount of lifting and

8    bending." AR 409. Dr. Staker found Plaintiff would most likely be able to perform sedentary to

9    light type work. AR 409. In his opinion of Plaintiff's functional abilities, Dr. Staker stated

10   Plaintiff "should have counseling and vocational discussion as he is just 49 years old." AR 409.

11   The ALJ gave significant weight to the findings and opinions of Dr. Staker. AR 18-19. After

12   detailing Dr. Staker's opinion, the ALJ stated "[i]t is also noteworthy that Dr. Staker

13   recommended vocational retraining for the claimant within his residual functional capacity." AR

14   19.

15         The ALJ provided a rational interpretation of the evidence: Dr. Staker recommended

16   vocational retraining when he stated Plaintiff "should have counseling and vocational

17   discussion." *See* AR 19, 409. Further, Plaintiff fails to show how the ALJ's interpretation of Dr.

18   Staker's opinion regarding counseling and vocational discussion changes Plaintiff's residual

19   functional capacity ("RFC") or the ultimate disability decision in this case. *See* Dkt. 14; *see*

20   *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) ("The burden is on the party claiming

21   error to demonstrate not only the error, but also that it affected his "substantial rights.").

22   Accordingly, the Court concludes the ALJ did not err in her evaluation of Dr. Staker's opinion.

23

24

1    B.   *Other Medical Sources*

2         Plaintiff maintains the ALJ erred when she rejected the medical opinions from Greater

3    Lakes and the Franciscan Spine Center. Dkt. 14, pp. 4-7, 8-9, 13-14.

4         Pursuant to the relevant federal regulations, medical opinions from "other medical

5    sources," such as nurse practitioners, therapists and chiropractors, must be considered. *See* 20

6    C.F.R. § 404.1513 (d); *see also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir.

7    2010) (*citing* 20 C.F.R. § 404.1513(a), (d)); SSR 06-3p, 2006 WL 2329939. "Other medical

8    source" testimony "is competent evidence that an ALJ must take into account," unless the ALJ

9    "expressly determines to disregard such testimony and gives reasons germane to each witness for

10   doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Turner*, 613 F.3d at 1224. In

11   rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane

12   reasons" for dismissing the testimony are noted. *Lewis*, 236 F.3d at 512.

13       1.   *Greater Lakes Mental Healthcare*

14       Plaintiff contends the ALJ erred by (1) failing to properly consider the Global

15   Assessment of Functioning ("GAF") score included in Plaintiff's treatment notes from Greater

16   Lakes and (2) rejecting the opinions of Constance Collier, Ed.S and Christina Woolery, M.A.[4]

17   Dkt. 14, pp. 4-7, 8-9.

18       First, in the January 2013 treatment notes from Greater Lakes, Ms. Woolery noted

19   Plaintiff had a GAF score of 42. AR 510. The ALJ gave little weight to the GAF score because it

20   "is inconsistent with the record as a whole and with the claimant's demonstrated abilities. It is

21

22   _____

23       [4] Plaintiff asserts the GAF score and the treatment notes from Ms. Collier and Ms. Woolery are opinions
     from acceptable medical sources. *See* Dkt. 14. A therapist without a doctorate does not meet the regulations'
     requirements for an "acceptable medical source." *See Fernandez v. Barnhart*, 68 Fed.Appx. 820, 821 (9th Cir.

24   2003); 20 C.F.R. § 404.1513 (2002). As Ms. Collier and Ms. Woolery are mental health counselors, the Court is not
     persuaded by Plaintiff's argument that the treatment notes are from "acceptable medical sources."

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 9

1    also inconsistent with his reports that he seemed to be doing "OK" on medication and was

2    responding well to therapeutic interventions." AR 19.

3         An ALJ may reject lay witness evidence if other evidence in the record regarding the

4    claimant's activities is inconsistent therewith. *See Carmickle v. Commissioner, Social Sec.*

5    *Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (ALJ's rejection of lay witness evidence because it

6    was inconsistent with claimant's successful completion of continuous full-time coursework

7    constituted reason germane to lay witness). In the Greater Lakes treatment notes, Plaintiff

8    reported he was doing "OK" and seemed to be doing "alright" on the medications. AR 500, 502.

9    By June of 2013, Plaintiff denied any increase in his symptoms and the notes reflect he was

10   responding well to therapeutic interventions. *See e.g.* AR 492, 494, 496-97, 499. The ALJ relied

11   on treatment notes which were inconsistent with the GAF score to support his decision to give

12   little weight to the score. Thus, the Court concludes the ALJ provided a germane reason for

13   discounting the GAF score.

14        Second, Plaintiff argues the ALJ erred by rejecting the opinions of Ms. Collier and Ms.

15   Woolery regarding Plaintiff's social isolation. Dkt .14, pp. 8-9. Plaintiff cites to three treatment

16   notes from Greater Lakes which note Plaintiff was feeling distant and down. *See id*. The ALJ

17   considered the mental health treatment notes from Greater Lakes when determining Plaintiff's

18   impairments and when assessing Plaintiff's credibility. *See* AR 14-15, 19. Relying on the

19   treatment notes from Ms. Collier and Ms. Woolery, the ALJ found Plaintiff had mild restrictions

20   in activities of daily living and moderate difficulties in social functioning and concentration,

21   persistence or pace. AR 15. In the RFC, the ALJ found Plaintiff is limited to unskilled work with

22   simple, repetitive tasks, and work which does not require interaction with the general public and

23   involves only occasional, superficial interaction with co-workers. AR 16.

24

Plaintiff does not allege what limitations the ALJ failed to consider, or explain how the RFC fails to take into account Plaintiff's social limitations. Further, neither Ms. Collier nor Ms. Woolery provided an opinion as to Plaintiff's functional limitations. *See* AR 488, 492, 519 (record citations identified by Plaintiff in his Opening Brief, Dkt. 14); *see generally* AR 442-522. As such, Plaintiff has not shown the ALJ failed to properly consider the Greater Lakes treatment notes. *Valentine v. Commissioner of Social Sec. Admin.*, 574 F.3d 685, 692, n. 2 (9th Cir. 2009) (the court rejected "any invitation to find that the ALJ failed to account for [the claimant's] injuries in some unspecified way" when the claimant failed to detail what limitations followed from the evidence beyond those already listed in the RFC).

For the above stated reasons, the Court concludes the ALJ gave a germane reason for rejecting the GAF score and properly considered the Greater Lakes treatment notes when determining Plaintiff's RFC. Accordingly, the ALJ did not err.

    2.  *Franciscan Spine Center*

Plaintiff asserts the ALJ also erred by failing to provide clear and convincing reasons for giving little weight to the Franciscan Spine Center's evaluation. Dkt. 14, pp. 13-14.

Plaintiff was seen at the Franciscan Spine Center in July and September of 2013. *See* AR 430-38. Plaintiff was treated by Nurse Practitioner Julie A. Benson.[5] *See* AR 435, 438. Ms. Benson found Plaintiff was 54-58% disabled under the Lumbar Oswestry Disability Function/Pain Questionnaire.[6] AR 431, 436. The ALJ gave little weight to Plaintiff's "Oswestry disability finding/score of moderately to severely disabled, as set forth by Franciscan Spine

---

[5] As Ms. Benson is an "other medical source," the ALJ is not required to provide clear and convincing reasons for giving little weight to her opinion. Rather, the ALJ is only required to provide a germane reason for rejecting the opinion.

[6] The Oswestry Disability Questionnaire is an assessment tool used to measure a patient's impairment and quality of life (i.e. how badly the pain impacts the patient's life).

1  Center [because t]his score is largely based upon the claimant's self-report of symptoms, which

2  [the ALJ] found to be not wholly credible." AR 19 (citations omitted).

3        An ALJ may reject an opinion "if it is based 'to a large extent' on a claimant's self-

4  reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035,

5  1041 (9th Cir. 2008) (*quoting Morgan v. Comm'r. Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir.

6  1999)). Here, the record shows Ms. Benson based her disability finding on Plaintiff's self-

7  reported pain. *See* AR 431. The disability finding was supported by Plaintiff's identified pain

8  levels and his reports regarding how the pain levels impact his daily activities. AR 431, 436. The

9  ALJ's finding that Plaintiff's disability rating was based on Plaintiff's subjective complaints was

10  reasonable and the ALJ properly discounted Plaintiff's self-reports as incredible. *See supra*

11  Section I. Accordingly, the Court concludes the ALJ provided a germane reason for giving little

12  weight to the disability rating provided by the Franciscan Spine Center.

13        To the extent Plaintiff is arguing the ALJ failed to properly consider the treatment notes

14  from the Franciscan Spine Center, the Court finds the ALJ did not err. The ALJ found Plaintiff's

15  lumbar degenerative disc disease to be a severe impairment and limited Plaintiff to light work

16  with additional limitations. AR 13-14, 16. The Franciscan Spine Center notes contain no

17  functional limitations, beyond the disability rating. *See* AR 430-38. Plaintiff does not explain

18  what limitations the ALJ failed to consider, nor explain how the RFC failed to take into account

19  the treatment notes from the Franciscan Spine Center. *See Valentine*, 574 F.3d at 692, n. 2.

20  Therefore, the Court finds the ALJ did not err in her analysis of the treatment notes from the

21  Franciscan Spine Center.

22  **III.**    **Whether the ALJ erred in assessing Plaintiff's RFC and finding Plaintiff not
disabled at Step 5 of the sequential evaluation process.**

23

24        Plaintiff next contends the ALJ erred in her assessment of Plaintiff's RFC and in her Step

5 analysis because the ALJ erred in her evaluation of Plaintiff's credibility, Dr. Staker's opinion, the Greater Lakes treatment notes, and the Franciscan Spine Center treatment notes. *See* Dkt. 14, pp. 14-15. As the ALJ properly discredited Plaintiff's complaints of disabling impairments and properly considered the medical evidence submitted by Dr. Staker, Greater Lakes, and the Franciscan Spine Center, *see supra* Sections I & II, Plaintiff's arguments fail. The RFC assessment and the hypothetical questions were properly based on the credible functional limitations contained in the record, and thus both the RFC assessment and the hypothetical questions posed to the vocational expert were proper. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (an ALJ's RFC assessment need only to incorporate credible limitations supported by substantial evidence in the record); *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006) (the ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence").

CONCLUSION

Based on the above stated reasons and the relevant record, the undersigned finds the ALJ properly concluded Plaintiff was not disabled and recommends this matter be affirmed pursuant to sentence four of 42 U.S.C. § 405(g). The undersigned recommends judgment be entered for Defendant and the case be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on March 18, 2016, as noted in the caption.

1    Dated this 3rd day of March, 2016.

2

3

4                                                    David W. Christel
                                                     United States Magistrate Judge
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24